HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL CHESBRO,

    Plaintiff,

    v.

BEST BUY STORES, L.P.,

    Defendant.

CASE NO. C10-774RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Plaintiff Michael Chesbro's unopposed motion for leave to file over-length brief (Dkt. # 87) and unopposed motion for preliminary approval of proposed class action settlement (Dkt. # 88). No party has requested oral argument, and the court finds oral argument unnecessary. For the reasons stated below, the court GRANTS the motion to file an over-length brief and DENIES the motion for preliminary approval of class action settlement.

## II. BACKGROUND

Best Buy Stores, L.P. ("Best Buy"), a national retailer of consumer electronics and related products, has a customer loyalty program called the Reward Zone Program. As part of the Reward Zone enrollment process, customers provide Best Buy with their contact information. Mr. Chesbro alleges that when consumers financed their purchases through an installment plan, they were signed up for the Reward Zone, and that Best Buy

ORDER – 1

then used the contact information provided to contact customers through direct mail, e-mail or telephone.

Mr. Chesbro alleges that beginning in the fall of 2007, Best Buy, through its calling vendor, began calling members to remind them to use their Reward Zone certificates before they expired. In the summer and fall of 2009, Best Buy introduced a "Go Digital" program to shift the issuance of Reward Zone certificates to online issuance through e-mail. Implementation of the Go Digital program involved notifying consumers of the new procedures, which Best Buy did by placing automated calls to customers. The certificate reminder and Go Digital programs lasted through November 2011.

On April 5, 2010, Mr. Chesbro filed a class action complaint in King County Superior Court, which was removed to this court. Mr. Chesbro alleges that Best Buy violated the Washington Automatic Dialing and Announcing Statute ("ADAD Statute"), RCW 80.36.400, the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq.*, and the federal Do-Not-Call regulations, 47 C.F.R. § 64.1200 *et seq.* The Do-Not-Call regulations are regulations promulgated under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b),[1] and an action brought for violation of the regulations may recover actual monetary loss or receive up to $500 in damages for each violation, whichever is greater, 47 U.S.C. § 227(b)(3)(B).

On September 16, 2011, the court granted summary judgment to defendant. Dkt. # 61. On December 27, 2012, the Ninth Circuit reversed and remanded the court's order on summary judgment. Dkt. # 70. Beginning on April 3, 2013, the court granted the parties' stipulated motions to stay to provide sufficient time for the parties to mediate and

---

[1] The TCPA prohibits the use of "automatic telephone dialing system" to make a call to a cellular phone without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii).

ORDER – 2

negotiate a settlement. Dkt. ## 77, 79, 81. On December 6, 2013, plaintiff filed the unopposed, pending motions.

## III. ANALYSIS

### A. Motion for Preliminary Approval of Class Settlement

The parties' agreement to settle this matter is not itself a sufficient basis for approving the settlement. The settlement would require the court to certify a class and dispose of the claims of its members. The court has an independent obligation to protect class members. *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). Even for a class certified solely for purposes of settlement, the court must ensure that the class and its proposed representatives meet the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In addition, the court must ensure that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Mr. Chesbro proposes that the court certify a national class and Washington class defined as follows:

> National Class. All United States residents except for those with Washington State area codes who, between October 8, 2007 and November 30, 2011, received a telephone call from or on behalf of Best Buy regarding Best Buy's Rewards Zone go digital policy, after they had asked Best Buy not to be called; and
>
> Washington Class. All persons who had Washington State area codes and who, between October 8, 2007 and November 30, 2011, received a telephone call from or on behalf of Best Buy regarding Best Buy's Rewards Zone certificate reminders or go digital policy that had been placed using an automated dialer and an artificial or pre-recorded voice.

Dkt. # 89 at 15 (Ex. 1 to Terrell Decl., Settlement Agr. ¶ II.7).

The court first considers whether the class Mr. Chesbro hopes to certify satisfies the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. The court will then turn to whether the class satisfies one of the three sets of requirements of Rule 23(b). After that, the court will address whether the

ORDER – 3

settlement the parties have reached is, at least on a preliminary basis, fair, reasonable, and adequate.

### 1. The Four Prerequisites of Rule 23(a): Numerosity, Commonality, Adequacy, and Typicality

The class Mr. Chesbro hopes to certify satisfies the numerosity and commonality requirements of Rule 23(a). There are about 439,000 members of the Washington class and 42,000 members of the national class, and there is no question that joinder of that many individual plaintiffs would be impracticable. Fed. R. Civ. P. 23(a)(1). Best Buy allegedly called every class member with an artificial or prerecorded voice after such individuals had asked that they not be called. From these common practices spring numerous common questions of fact and law, including whether the calls made constituted "solicitations" under the relevant statutes. Fed. R. Civ. P. 23(a)(2).

While the numerosity and commonality requirements focus on the class, the typicality and adequacy requirements focus on the class representative. The representative must have "claims or defenses . . . [that] are typical of the claims or defenses of the class," and must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4).

Mr. Chesbro's claims are also typical of class members' claims where he, like every other class member, allegedly received the automated calls without his consent. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (representative's claims are typical "if they are reasonably coextensive with those of absent class members; they need not be substantially identical.").

Questions of a class representative's adequacy dovetail with questions of his counsel's adequacy. Fed. R. Civ. P. 23(g)(4) ("Class counsel must fairly and adequately represent the interests of the class."). The court has no difficulty concluding that counsel has provided and will likely continue to provide adequate representation for the proposed class.

ORDER – 4

### 2.     The Requirements of Rule 23(b)(3)

The court now considers whether the proposed settlement class meets the requirements of Rule 23(b)(3). Rule 23(b)(3) demands that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When considering a settlement class, the court need not worry about whether the action could be manageably presented at trial. *Amchem Prods.*, *Inc.* v. *Windsor*, 521 U.S. 591, 620 (1997).

The court lacks sufficient information to determine whether the factual and legal questions arising from Chesbro's classwide practices of autodialing customers predominate over individual questions. It is possible, for example, that questions pertaining to whether class members had at some point consented to the receipt of Best Buy's calls are individualized. The court has no idea, because no party presented any evidence on this issue.

While the predominance of common issues is in some doubt, the superiority of a class action is not. This suit is based on a narrow set of practices that led to automated telephone calls that targeted a combined 481,000 individuals.

### 3.     Is the Settlement Fair, Reasonable, and Adequate?

The court now considers whether the settlement is fair, reasonable, and adequate. The court's findings on this issue are necessarily preliminary.

How much could each class member gain by going to trial? The parties have not provided any relevant evidence or argument to the court. Nevertheless, all class members stand to reap the benefits of the TCPA, which provides either actual damages or statutory damages of $500 for automated telephone calls that violate it. 47 U.S.C. § 227(b)(3)(B). No one suggests that any class member suffered actual damages as a result of the automated calls. The TCPA also permits a court to treble damages for willful violations. *Id.* § 227(b)(3)(C). Washington residents have the opportunity to claim additional

ORDER – 5

benefits via Washington's ADAD Statute. Like the TCPA, the ADAD Statute permits actual damages or up to $500 in statutory damages. RCW § 80.36.400(3). Moreover, a violation of the ADAD Statute is a per se violation of the CPA, which permits the court to treble damages. *Id.*; RCW § 19.86.090. To summarize, every class member stood to gain at least $500 in statutory damages for each automated call, and perhaps as much as three times that amount. Washington class members could theoretically do so for three separate statutory violations.

Mr. Chesbro estimates that each settlement class member will receive $50 to $100 per call. However, Mr. Chesbro does not provide the court with any understanding of how he reached this estimate. Nor does Mr. Chesbro provide argument regarding whether a $50 or $100 settlement on a potential $1,500 claim is reasonable. By the court's calculations, each settlement class member's potential recovery per claim, with treble damages, would amount to between 3.3 and 6.6 percent of the statutory amount, and, without treble damages would amount to between 10 and 20 percent. While the latter amounts appear to be in line with settlement awards approved in other cases, the parties have not addressed the potential for treble damages here.

Additionally, Mr. Chesbro has not provided the court with any evidence documenting the estimated administrative costs. The court has no idea how much of the $4.55 million in the Settlement Fund will actually be available to pay class members. Additionally, it appears that the payments Best Buy has offered to class members may well be much smaller than the $50 to $100 payments per claim that the settlement trumpets. For purposes of this order, the court assumes that the minimum aggregate compensation to class members is $3 million. *See* Dkt. # 89 at 48 (Ex. E to Terrell Decl.) (notice that estimates that $3 million will be available to make monetary payments to class members). At $50 per claim, the $3 million figure is only sufficient to fund

ORDER – 6

60,000 claims out of the potential 1.3 million claims.[2] Even if each class member only submitted one claim, by the court's calculations, it would take between $24 million and $48 million to fully pay each class member in accordance with the settlement agreement. Plaintiff does not address what will happen if more than 60,000 claims, out of the potential 1.3 million claims, are submitted, or address whether the percentage of participation is within a normal range for participants in class actions.[3]

With respect to the requested $1.3 million in attorney's fees and the $5,000 incentive award to Mr. Chesbro, plaintiff has not provided the court with any evidence of the amount of hours Mr. Chesbro and counsel devoted to the case. Nevertheless, $1.3 million in attorney's fees and costs is twenty-five percent of the total settlement, and the Ninth Circuit has established a benchmark award for attorney's fees of twenty-five percent of the common fund. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). The court is favorably inclined on preliminary basis to find that the attorney's fees request is reasonable, provided that the parties adequately address the court's concerns.[4] *See In re Bluetooth Headset Prods. Liab. Lit.*, 654 F.3d 935, 941 (9th Cir. 2011) (court has independent obligation to ensure that the fee award, like the settlement, is reasonable, even if the parties have already agreed to an amount); *In re Mercury Interactive Corp. Sec. Lit.*, 618 F.3d 988, 993-94 (9th Cir. 2010) (class members must

---

[2] To reach the potential 1.3 million claims, the court assumes that each of the 439,000 Washington class members submitted the three maximum claims.

[3] The court notes that this court has previously found that 8.5 percent of participation is within the normal range for participants in class actions. *See McClintic v. Lithia Motors, Inc.*, Case No. C11-859RAJ, Dkt. # 31 at 11. The court encourages the parties to review the court's orders in the *McClintic* case, located at Dkt. ## 31, 33, 37, & 50.

[4] The court expects that counsel will provide detailed billing records when it files its motion for attorney's fees and costs. *See Id.* ("This 'benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors.'"). The court reminds the parties that class members must have the opportunity to review and object to the fee request. Fed. R. Civ. Proc. 23(h). The notices to class members do not currently provide a mechanism or instruction on how a class member could review the fee motion.

ORDER – 7

have an adequate opportunity to object to the fee motion).  Similarly, on a preliminary basis, the court finds the $5,000 incentive payment is reasonable.[5]

The form of notice that class counsel provides, which it proposes to e-mail and/or mail to all class members, is essentially reasonable.  Fed. R. Civ. P. 23(c)(2)(B) (requiring "best notice that is practicable under the circumstances, including all members who can be identified through reasonable effort").  Nevertheless, given the court's concerns above, and the fact that the notice contains the same projected $50 to $100 per claim, the court cannot approve that portion of the notice without additional information.

In sum, the court does not have sufficient information to be able to determine whether the settlement is fair, reasonable, and adequate.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS plaintiff's unopposed motion for leave to file an over-length brief (Dkt. # 87) and DENIES plaintiff's unopposed motion for preliminary approval of proposed class action settlement without prejudice (Dkt. # 88).  Plaintiff may file a renewed motion that addresses the concerns raised by the court no later than March 28, 2014.

DATED this 26th day of February, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

---

[5] The court expects that counsel will provide evidence of the amount of time Mr. Chesbro invested in this case prior to any fairness hearing.

ORDER – 8